**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA** **CRIMINAL ACTION**

**VERSUS**

**VICTOR CLARK KIRK** **NO. 19-00115-BAJ-RLB**

# RULING AND ORDER

Before the Court is Petitioner's *pro se* **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 261).** The Government opposes the Petition. (Doc. 278). Petitioner submitted a reply brief. (Doc. 283). For reasons below, the Petition will be **DENIED**.

## I. BACKGROUND

Petitioner was convicted by a jury in 2022 of five counts of wire fraud and one count of conspiracy to commit wire fraud. (Doc. 151). His sentence included a term of imprisonment of 82 months on each of the counts to run concurrently, restitution in the amount of $1,841,527.31, a forfeiture money judgment in the amount of $234,789.87, and a fine of $30,000. (Doc. 217). Petitioner appealed two issues: 1) the amount of the forfeiture money judgment and 2) the Court's imposition of a $30,000 fine. (Doc. 210). The U.S. Court of Appeals for the Fifth Circuit vacated only the forfeiture money judgment and remanded to the Court for more detailed findings regarding Petitioner's salary and bonuses gained during the alleged fraud. *United States v. Kirk*, No. 23-30048, 2024 WL 125707, at *3 (5th Cir. Jan. 11, 2024). Upon remand, the Court held an evidentiary hearing and issued an Amended Order of

Forfeiture in the amount of $ 82,685.37. (Docs. 245 and 246). Petitioner again appealed. (Doc. 247). Petitioner's appointed counsel filed an *Anders* brief, asking to be excused from representation because there were no non-frivolous issues for appeal from the Court's Amended Order of Forfeiture. *United States v. Kirk*, No. 24-30407, 2025 WL 429976 (5th Cir. Feb. 7, 2025). The Fifth Circuit concurred with counsel's assessment and dismissed the appeal. *Id.* Now, Petitioner seeks to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel. (Doc. 261).

## II. LAW AND ANALYSIS

### A. Standard

Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Specifically, the statute sets forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255(b).

A Petitioner seeking relief under section 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

Finally, and importantly, the Petitioner must show "actual prejudice" resulting from a constitutional violation in order to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Actual prejudice" occurs when the constitutional error "had substantial and injurious effect or influence" on the outcome of the proceeding. *See id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The Sixth Amendment guarantees criminal Petitioners the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. at 5, 124 (2003).

The Court reviews claims of ineffective assistance of counsel under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Petitioner must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must

be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted). Moreover, in a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. *See Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994).

**B. Discussion**

Petitioner claims ineffective assistance of counsel on three grounds: 1) failure to call an expert Medicaid fraud witness; 2) failure to investigate, impeach witnesses, assemble rebuttal witnesses, and develop evidence in support of Petitioner's claim that other employees were the leaders of the conspiracy for which he was convicted; and 3) failure to object to the sentencing enhancement Petitioner received for a leadership role and failure to prove that Petitioner was incapable of paying the $30,000 fine imposed. The Court will consider each in turn.

**1. Failure to Call Expert Medicaid Fraud Witness**

First, Petitioner asserts that he was denied effective assistance of counsel because his counsel allegedly "failed to demonstrate . . . that the evidence shows a total amount of revenue received by St. Gabriel as $10,203.598.00 during the period of January 2011 to June 2015." (Doc. 261-1 at 12). However, Petitioner appears to direct this argument toward alleged failures of counsel to call an expert Medicaid witness during an evidentiary hearing on remand from his direct appeal of his forfeiture judgment. (*Id.* at 19, 27-28). As the Government points out, the Fifth Circuit's mandate in the case limited this Court's review of the forfeiture judgment to "evidence originally presented." *United States v. Kirk*, No. 23-30048, 2024 WL 125707, at *3 (5th Cir. Jan. 11, 2024); (Doc. 278 at 30-31). Thus, his counsel could not have introduced additional witnesses or evidence at the evidentiary hearing on remand as he suggests. This precludes a finding in Petitioner's favor for either *Strickland* prong on this issue.

In his reply brief, Petitioner attempts to add an additional branch to this claim, arguing that his counsel was also deficient for failing to establish an adequate record on the forfeiture amount during the sentencing hearing. (Doc. 283 at 10). However, this issue has already been resolved following Petitioner's appeal to the Fifth Circuit, which resulted in an amended forfeiture money judgment, a second appeal of which the Fifth Circuit dismissed as frivolous. (Doc. 245); *United States v. Kirk*, No. 24-30407, 2025 WL 429976 (5th Cir. Feb. 7, 2025). Thus, Petitioner is similarly unable

to show prejudice that resulted from counsel's alleged deficiency. (Doc. 283 at 5).

To the extent that Petitioner takes issue with his counsel not introducing a Medicaid expert witness during trial or at sentencing, this argument is unpersuasive. "Complaints of uncalled witnesses are not favored in habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986) (citations omitted). "Absent some showing that a counsel's subjective decision-making was *objectively* unreasonable in view of the information and evidence available to said counsel, it is virtually impossible for a habeas corpus petitioner to overcome the presumption of reasonableness afforded his counsel's strategic and tactical decisions under *Strickland.*" *Moore v. Quarterman*, 526 F. Supp. 2d 654, 694 (W.D. Tex. 2007) (citing *Gutierrez v. Dretke,* 392 F.Supp.2d 802, 875–76).

"[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). Petitioner has not met this burden. In fact, Petitioner appears to imply that he is the only person who could "correctly calculate St. Gabriel's revenue, restitution and forfeiture." (Doc. 261-1 at 23-24). Petitioner argues "had a qualified Medicaid billing specialist or forensic accountant testified at sentencing and explained why . . . the government's

percentage calculation [was] methodically unsound, there is a reasonable probability the Court would have accepted a lower forfeiture percentage." (Doc. 283 at 5). However, this is entirely speculative. No such willing expert who would testify to this has been identified, and given the amount of evidence that exists in the record against Petitioner, it is entirely possible one does not exist.

Moreover, Petitioner goes on to detail his counsel's efforts to present evidence and arguments to attempt to secure a lower forfeiture judgment for Petitioner, including financial statements, auditor reports, and an affidavit from a potential witness, William Root. (Doc. 261-1 at 15-20; Doc. 283 at 3-4). Petitioner takes umbrage with his counsel's decision to submit an affidavit from this witness rather than live testimony yet accedes that during trial the Court acknowledged this as a strategic decision. (Doc. 283 at 4). "A strategic or tactical decision not to call particular witnesses does not constitute ineffective assistance." *Green v. Cockrell,* 67 Fed. App'x 248, 250 (5th Cir. 2003). As the Government points out, these efforts ultimately resulted in a "reduction of the money forfeiture judgment from $234,789.87 to $82,684.37." (Doc. 278 at 31). Thus, it is difficult to discern what prejudice Petitioner attempts to show to meet his burden under *Strickland* on this issue.

**2. Failure to Investigate and Present Evidence That Other Employees Were the Leaders of Conspiracy**

Second, Petitioner argues that counsel was ineffective because they allegedly failed to conduct investigation, review exculpatory evidence, identify possible areas

of impeachment, assemble rebuttal witnesses, and develop evidence to support the theory that co-Petitioner Marilyn Brown Antwine, and another employee of Petitioner's organization, Michael Dan Gaines, were the organizers and leaders of the conspiracy to commit health care fraud. (Doc. 261-1 at 31). Petitioner claims that "Ms. Antwine and Mr. Gaines were the masterminds behind the Medicaid fraud and . . . conspired to shift the blame to [him] at the direction and instruction of the Government with the promise of a reduced sentence." (Doc. 261-1 at 36). Petitioner argues that "there was ample evidence available to Counsel to impeach the Government's prepared witnesses," though does not identify exactly what additional evidence he refers to, other than his own speculative hypotheses about their motives and an alleged conspiracy to place the blame on him. (*Id.* at 38, 40-41).

However, none of his allegations regarding these other employees are necessarily exculpatory for him. As the Government points out and the Court is well aware, having presided over the trial and sentencing in this matter, the case against Petitioner was very strong and "[t]he strength of the case limits the strategy defense counsel may employ defending [their] client." (Doc. 278 at 26). Both Antwine and Gaines were cross-examined thoroughly by defense counsel, and the jury was aware of their cooperation with the government. (*Id.*). They were also not the only witnesses to testify to Petitioner's role as a leader. Several other former employees also testified that Petitioner "placed pressure on them to generate more billable claims to Medicaid by supplying false or inappropriate diagnoses and the medical treatment employed

to address those diagnoses." (*Id.* at 27). Counsel also *did* put forward Petitioner's theory by, among other things, seeking to portray him as lacking "any know-how about billing" during Antwine's and Gaines' cross examinations. (*Id.* at 29). Petitioner thus fails to show that his counsel was deficient in this regard.

The Court finally notes that while "counsel has a duty to make reasonable investigations," they can also "make a reasonable decision that makes particular investigations unnecessary." *United States v. Drones,* 218 F.3d 496, 500 (5th Cir. 2000). Petitioner does not provide evidence to overcome the presumption that his counsel acted reasonably in developing their trial strategy on this issue.

**3. Failure to Challenge Leadership Enhancement and Amount of Fine at Sentencing**

Third, Petitioner argues that counsel was ineffective because they allegedly did not object to the sentencing enhancement he received for a leadership role in the conspiracy, nor to the Court's conclusion that Petitioner was capable of paying the $30,000 fine imposed. (Doc. 261-1 at 45-46). However, in his reply brief, Petitioner admits that his counsel *did* object to this sentencing enhancement. (Doc. 283 at 9). His qualm, apparently, lies in the nature and manner of their objection and their ultimate lack of success. Petitioner argues his counsel should have presented witnesses or other evidence to make a factual showing that others, not Petitioner, were the operational leaders of the criminal activity. (*Id.*). Petitioner references the trial record to this point. (*Id.*). The Court has already addressed this argument above. There was overwhelming evidence in the trial record, including testimony from

several former employees, that Petitioner exerted close supervision and control over those who participated in the scheme to defraud Medicaid, clearly meeting the standard for a leadership enhancement under the United States Sentencing Guidelines § 3B1.1. (Doc. 278 at 27-29).

Moreover, as the Government notes, defense counsel filed eleven objections to Petitioner's pre-sentence investigation report ("PSR"), a lengthy sentencing memorandum, and 45 exhibits. (Doc. 278 at 28). Although Petitioner may not like how the Court exercised its discretion in sentencing him, his attorneys were nowhere near deficient in their attempt to oppose this enhancement and reduce his sentence.

Regarding the imposition of a $30,000 fine, Petitioner argues that his counsel was ineffective for failing to show that he was incapable of paying it and for not objecting to the Court's imposition of the fine at sentencing. (Doc. 261-1 at 46). However, again, the record reveals that his counsel *did* object to the fine and that information regarding his financial condition was contained within the PSR. (Doc. 216 at 80; Doc. 278 at 31). Moreover, sentencing, including the imposition of a fine, is entirely within the Court's discretion. The amount of the fine imposed was within the applicable guideline range. Moreover, this issue was already raised on direct appeal and the Fifth Circuit held that the Court did not abuse its discretion. *United States v. Kirk*, No. 23-30048, 2024 WL 125707, at *3 (5th Cir. Jan. 11, 2024). Petitioner has failed to show both prejudice and deficient performance by counsel on this issue, too.

## III. CONCLUSION

In sum, Petitioner has failed to show that he is entitled to relief. Accordingly,

**IT IS ORDERED** that Petitioner's **Motion To Vacate or Set Aside 2255 Ineffective Assistance of Counsel (Doc. 261)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's **Motion for 45 Day Extension of Time to Respond (Doc. 281)** be and is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Petitioner's **Motions to Appoint Counsel (Docs. 264, 275, and 282)** be and are hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Petitioner's **Motion for Stay of Execution of Forfeiture Judgment Pending Resolution of 28 U.S.C. § 2255 Motion (Doc. 284)** be and is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Petitioner's related civil proceeding captioned 3:25-cv-00317-BAJ be and is hereby **TERMINATED** and **DISMISSED** based on the reasoning set forth herein.

Baton Rouge, Louisiana, this 26th day of August, 2026

Brian A. J

**BRIAN A. JACKSON, JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**